UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KAREN H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:20-cv-6112

Sargus, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Karen H. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. Pursuant to local practice, this matter has been referred to the undersign magistrate judge for a report and recommendation. The Commissioner's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On May 7, 2018, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging she became disabled on March 1, 2012, based upon chronic headaches, postural orthostatic hypotension syndrome (hereinafter, "POTS"), rheumatoid arthritis, fibromyalgia, torn disc L4/L5, bulging discs, herniated discs C4/C5, degenerative disc disease and anxiety. (Tr. 203). After her claim was denied initially and upon

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

1

reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On January 8, 2020, Plaintiff appeared with counsel and gave testimony before ALJ Deborah Sanders; a vocational expert ("VE") also testified. (Tr. 31-64). On March 27, 2020, ALJ Sanders issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 15-26). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner.

In a timely judicial appeal, Plaintiff argues that the ALJ erred in evaluating her migraine headaches. Additionally, Plaintiff asserts that a fundamental constitutional defect in the statutory structure of the Social Security Administration requires remand of this case to be decided by a new ALJ and/or Appeals Council.

In order to be eligible for benefits, Plaintiff must prove that she became disabled on or before her date last insured ("DLI"). Based upon Plaintiff's earning history, she is insured for purposes of DIB only through September 30, 2018. (Tr. 17). Although Plaintiff had some earnings after her alleged onset date, the record reflected that those earnings consisted of unused sick and vacation time and were not substantial gainful activity.

At 44 years old, Plaintiff was considered a "younger individual" on her alleged disability onset date. However, by the time of her DLI, she was 50 years old and had progressed to the age category of an "individual closely approaching advanced age." She has a college education and prior work as a retail pharmacist. She lives with her husband and three children, the oldest of whom is in college.

The ALJ found that Plaintiff has severe impairments of "migraine headaches, fibromyalgia and cervical spine and lumbar spine degenerative disc disease." (Tr. 17). Although Plaintiff's records contained additional diagnoses of rheumatoid arthritis and of POTS, the ALJ did not find either impairment to be severe. The ALJ noted that a

2

rheumatology evaluation did not find rheumatoid arthritis, and that her POTS was "well managed on medication." (Tr. 18). The ALJ also considered a non-severe impairment of hyperlipidemia for which Plaintiff "is medically managed without any apparent complications." (*Id*.) Last, the ALJ found non-severe impairments of anxiety and depression. (*Id*.) The ALJ further determined that none of Plaintiff's impairments, either alone or in combination, met or equaled any listed impairment in 20 C.F.R. Part 404, Subpt P, Appx. 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 19).

The ALJ next determined that Plaintiff could perform light work, except that she could only perform:

> frequent climbing ramps and stairs; never climbing ladders, ropes or scaffolds; frequent stooping; occasional kneeling, crouching and crawling; never working at unprotected heights or around dangerous machinery; no commercial driving and the claimant is limited to performing tasks that do not require strict production quotas or fast paced production rate and is able to adapt to a work environment with infrequent changes that can be explained in advance.

(Tr. 20).

Based upon the RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform her prior skilled work as a pharmacist, but still could perform other unskilled jobs that exist in significant numbers in the national economy, including the representative jobs of mail clerk, weight receiving clerk, or cafeteria attendant. (Tr. 25). Therefore, the ALJ determined that Plaintiff was not under a disability through the date of her decision. (*Id.*)

In this judicial appeal, Plaintiff argues that the ALJ erred in evaluating her RFC limitations based upon an improper assessment of her migraine headaches. In addition, Plaintiff presents a separate constitutional challenge pursuant to *Seila Law LLC v. CFPB*,

3

140 S. Ct. 2183 (2020). Under *Seila Law*, Plaintiff argues that the structure of the Social Security agency violates the separation of powers, such that the Commissioner's delegation of authority to the ALJ and the adverse decision in this case cannot be upheld.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. The Constitutional Challenge**

For the convenience of this Court, the undersigned first addresses Plaintiff's constitutional challenge. Plaintiff brings this challenge on the basis of *Seila Law LLC v.*

*Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020), a case in which the Supreme Court held that an organizing statute that made the CFPB Director removable only for cause amounted to an unconstitutional restriction on the president's authority to remove the head of an agency, and therefore violated the separation of powers. *See Seila Law*, 140 S. Ct. at 2197. Plaintiff argues that because the Commissioner of Social Security also is not subject to removal by the President except for "neglect of duty or malfeasance in office," *see* 42 U.S.C. § 902(a)(3), the structure of the SSA also violates the separation of powers.

The Commissioner concedes that 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause." (Doc. 10 at 12, citing Office of Legal Counsel, U.S. Dept. of Justice Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981541 (July 8 , 2021) ("OLC OP."). However, relying upon another recent separation of powers case, *Collins v. Yellen*, ___ U.S. ___, 141 S. Ct. 1761 (2021), the Commissioner maintains that Plaintiff is not entitled to reversal or remand of the non-disability decision because she was not harmed by the unconstitutional restriction on the president's removal authority.

In *Collins*, a plaintiff alleged that the leadership structure of the Federal Housing Finance Agency (FHFA) was unconstitutional because - as alleged here and in *Seila Law* - the sole head of that agency was removable by the President only for cause. Despite the unconstitutionality of the removal provision, the Supreme Court clarified in *Collins* that a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision… inflict[ed] compensable harm." *Id*., 141 S. Ct. at 1789. The *Collins* majority reasoned that unlike an unlawful appointment of an agency head, "the unlawfulness of [a]

6

removal provision" "does not strip [an official] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n. 23. "As a result…there is no reason to regard any of the actions taken" by an agency during the period in which an unconstitutional removal provision was in effect "as void" absent a specific showing of injury. *Id.* at 1787.

Since the publication of *Seila Law* and *Collins*, the arguments presented by the parties in this case have been made in similar cases before many district courts within the Sixth Circuit, as well as on a national level. In a persuasive published decision that is directly on point, the Ninth Circuit rejected arguments that the constitutional infirmity of § 902(a)(3) supports remand in social security cases absent a non-speculative and particularized showing of "actual injury" by the claimant in question. *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) (rejecting claim by plaintiff whose appeal to the Appeals Council was denied while Commissioner Saul served under an unconstitutional removal provision). The *Kaufmann* court affirmed the denial of relief because the plaintiff could not show, for example, that the President took an interest in her claim, or that the Commissioner directed the Appeals Council to act in a certain way relative to her claim. And the plaintiff's contention that her claim might have been decided differently was too speculative to show a particularized actual injury. *Id.*

The Sixth Circuit has not yet decided a similar case in the social security context, but recently cited *Kaufmann* with approval when it rejected a similar claim by a plaintiff who was challenging an action by the FDIC. *See Calcutt v. Federal Deposit Insurance Corporation*, 37 F.4th 293 (6th Cir. 2022). Even more tellingly, every district judge and magistrate judge within the Sixth Circuit who has been presented with Plaintiff's argument in scores of cases decided to date has rejected it. *See, e.g.*, *Sandra S. v. Com'r of Soc. Sec.*, 2022 WL 486311 (S.D. Ohio Feb. 17, 2022), *adopted at* 2022 WL 2154921 (S.D.

7

Ohio June 15, 2022); *Heidi J. D. v. Com'r of Soc. Sec.*, 2022 WL 1555108, at *6 (S.D. Ohio May 17, 2022), *adopted at* 2022 WL 2187238 (S.D. Ohio Jun 17, 2022); *Crawford v. Com'r of Soc. Sec.*, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021), *adopted at* 2022 WL 219864 (S.D. Ohio Jan. 25, 2022); *Alec F. v. Com'r of Soc. Sec.*, 2022 WL 278307, at *5 (S.D. Ohio Jan. 31, 2022), *adopted at* 2022 WL 884022 (S.D. Ohio March 25, 2022). In addition to *Kauffman* and the growing body of unpublished case law within the Sixth Circuit, the undersigned finds persuasive the reasoning of a published district court case in this circuit that addresses this same issue, *Rhouma v. Commissioner of Social Security*, ___ F. Supp.3d ___, 2021 WL 5882671, at *10-11 (N.D. Ohio Dec. 13, 2021).

In *Rhouma*, the court held that the plaintiff lacked standing to challenge the constitutionality of the SSA's structure based upon her inability to demonstrate any actual injury.[2]

> Rhouma argues that she has standing because her administrative proceedings were conducted pursuant to polices and regulations implemented by [Commissioner] Saul. … But that's not enough. "[T]he unlawfulness of the removal provision does not strip the [Commissioner] of the power to undertake the other responsibilities of his office." *Collins*, 141 S. Ct. at 1788 n.23. As Justice Thomas's concurring opinion clarifies, Rhouma must do more than point to a conflict between 42 U.S.C. § 902(a)(3) and the Constitution; she must show some action on the part of Saul that was unlawful and harmful to her. *See id.* at 1790-91 (Thomas, J., concurring). More to the point, Rhouma must show that the policy and regulatory changes implemented by Saul adversely affected her. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 n.1…(1992) ("[T]he injury must affect the plaintiff in a personal and individual way.").

*Id.*, 2021 WL 5882671, at *11.

---

[2]*Rhouma* noted that even though the Commissioner had not used the term "standing," its argument that the plaintiff had not established a "nexus" between the removal restriction and alleged harm to the plaintiff had "effectively argued" that plaintiff could not meet "the traceability requirement for standing." *Id.* at *10. The Commissioner makes the same "nexus" argument in this case.

8

Like the plaintiff in *Rhouma*, Plaintiff here lacks standing because she is unable to demonstrate any actual injury.³ *See also, e.g., Walker v. Commissioner of Social Security Administration*, 2022 WL 1266135, at *5 (N.D. Ohio April 28, 2022) (holding that plaintiff lacked standing, distinguishing unpublished cases outside the Sixth Circuit holding to the contrary). Because Plaintiff is unable to demonstrate any particularized injury resulting from the issuance of an adverse decision during the time in which Commissioner Saul served, the undersigned finds no need to address the parties' alternative arguments.

### 2. The ALJ's Assessment of Plaintiff's Migraine Headaches⁴

In addition to her constitutional claim, Plaintiff argues that this Court should reverse based upon errors made by the ALJ in the evaluation of her migraine headaches. Plaintiff reported that her migraine headaches are debilitating to the point where she is bedridden, and that she experiences migraines and chronic pain most days of the month. (Tr. 21; Tr. 233). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). The ALJ found Plaintiff's testimony "regarding the extent of such symptoms and limitations" to be "not fully

---

³Citing to circumstantial evidence, Plaintiff asserts that President Biden "would have fired Commissioner Saul immediately upon taking office had he believed it was legal," (Doc. 24 at 23), and delayed firing him only until the Department of Justice issued its opinion confirming that the removal restriction violated the separation of powers. But Plaintiff's argument that Commissioner Saul lacked any authority at all after President Biden took office ignores the contrary holding of *Collins* that only an improper appointment can have such effect. Plaintiff further hypothesizes in a conclusory fashion, without analysis, that general policies implemented during Commissioner Saul's tenure might have impacted Plaintiff. (Doc. 24 at 20). Similarly, Plaintiff suggests that a different Commissioner might have implemented new policies or directed Appeals Council judges to decide cases in a manner that could have impacted the outcome of her claim. As discussed by the Ninth Circuit in *Kauffman* and by the district court in *Rhouma*, such speculative musings are insufficient to demonstrate actual injury or standing.

⁴The undersigned's review of this claim was made more difficult by Plaintiff's citation to PageID numbers without citation to Transcript page numbers. Counsel is reminded that in social security cases, counsel is required to cite to the Administrative Transcript. *See* Local Rule 8.1.A (d) "When citing to the administrative record in Social Security cases, parties must provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations."

supported." (Tr. 24). While including a number of limitations based upon Plaintiff's testimony and subjective complaints, the ALJ found that the evidence "was not persuasive to establish an inability to perform" all work.

Plaintiff argues that, contrary to the ALJ's interpretation, her subjective reports were consistent with Cleveland Clinic records, and were further supported by evidence from her treating neurologist. However, the undersigned finds no error in the evaluation of Plaintiff's subjective complaints or in the analysis of her neurologist's opinions.

### a. Evaluation of Subjective Complaints

An ALJ's assessment of subjective symptoms, including pain complaints, is generally given great deference. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[5] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Here, the ALJ noted many inconsistencies between the record presented and Plaintiff's allegations that her migraines were disabling.

For example, the ALJ noted that the objective evidence overall, including brain imaging and physical examinations, showed no abnormalities. (Tr. 21). Treatment notes throughout the record also "reflect the claimant generally presents as alert and oriented

---

[5]An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

with intact memory and in no apparent distress." (Tr. 22, citing records). During a consultative psychological exam conducted on June 28, 2018, Plaintiff reported that she was contemporaneously experiencing a migraine. Despite some noted difficulty in concentrating, the examiner found "she maintained the ability to recall seven digits forward, recall three words presented after a brief delay, correctly complete a serial seven subtraction task and correctly respond to five arithmetic problems." (Tr. 22).

The ALJ also discussed the fact that throughout the years, and despite Plaintiff's consistent reports of severe headaches and pain, there were "no significant physical abnormalities and some improvement with treatment," (Tr. 23). The ALJ noted her "positive response" to multidisciplinary treatment at the Cleveland Clinic, which included medical and psychological treatment as well as physical therapy.

> Upon post-discharge follow-up, it was noted that the treatment helped an enormous amount, the claimant was more than 50 percent better and *had only experienced two severe headaches in the past 23 months*. The claimant reported that her head felt "brand new." She further indicated that she was having very few headaches that typically coincided with marital stress and flying (Exhibit 1F/11, 20-21, 24-25). The claimant did continue to undergo regular headache treatment in the form of medication, botox injections and periodic infusions, all which have been shown to improve her symptoms (Exhibits 14F, 17F, 18F).

(Tr. 22, emphasis added).

Plaintiff argues that her Cleveland Clinic records do not support the ALJ's analysis. She cites to one record dated 12/4/2014, in which she reported that the last dose of prescribed Botox was ineffective and she was then vomiting every other day with headaches every day. (Tr. 294). The prescribing physician suggested a trial of steroids at that time to which Plaintiff agreed. (*Id.*) Plaintiff also points to a notation of a telephone call on 5/28/2015 in which she was seeking a medication adjustment based upon a report of headaches 6 out of 7 days per week. (Tr. 293). She asserts "there is no evidence

11

that [Plaintiff's] migraine headaches were under control" after treatment at the Cleveland Clinic. (Doc. 14 at 10).

The undersigned agrees that Plaintiff continued to report frequent migraine headaches after treatment at the Cleveland Clinic, but disagrees that the mere existence of frequent headache reports demonstrates that her headaches were disabling. While the two records cited by Plaintiff suggest brief periods of exacerbation in the number of headaches, they do not overcome the substantial evidence cited by the ALJ in support of her conclusion that the symptoms that Plaintiff experiences from her impairments, including migraines, do not preclude *all* work. Many people are able to engage in fulltime work despite suffering from some level of chronic pain, including headaches. As discussed by the ALJ, in this case the longitudinal record (including objective evidence, statements made by Plaintiff herself, and multiple medical visits in which she was noted to be in no distress), was inconsistent with Plaintiff's reports that her symptoms were continuously so severe from March 2012 through March 2020 so as to preclude all work. (*See*, *e.g.*, Tr. 309, 5/7/13 note stating that she felt "better than she did before," that her "head feels pretty good," like "her head is brand new"; Tr. 310, "headaches are good"; Tr. 307, 8/15/13 note reporting treatment has helped "by an enormous amount" with "only 2 headaches in the last 23 months."; Tr. 300, 2/27/14 note reporting doing well on Botox "with very few headaches except when she flies."). On June 28, 2018, Plaintiff reported to a consulting psychologist that, after completing the Cleveland Clinic program she had planned to return to work as a pharmacist for Costco but "then they moved to Myrtle Beach, South Carolina for her husband's job." (Tr. 469).

Plaintiff argues that after she moved to South Carolina and began treating with a new neurologist, Dr. Jaclyn Laine, her headaches persisted at a disabling level. Again,

12

however, Plaintiff's citation to select treatment records does not overcome the substantially supported conclusion that the record is inconsistent with her report of disabling symptoms. The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Commissioner,* 693 F.3d 709, 713 (6th Cir. 2012). Based upon a review of the record as a whole, the undersigned finds the ALJ's evaluation of Plaintiff's subjective complaints to be substantially supported.

Plaintiff began treating with Dr. Laine in February 2017, at which time Dr. Laine noted Plaintiff's subjective report of chronic head and neck pain, and that she "previously had two days per month headache free," but had improved to "generally two days per week headache free since her hysterectomy." (Tr. 465). At the time, Plaintiff subjectively reported that most of her headaches were "disabling to some degree" and lasted 5 hours on average. (Tr. 465). However, Dr. Laine noted that Plaintiff reported only "rare vomiting and in bed for two days." (*Id*). Dr. Laine's subsequent treatment records reflect consistent improvement, despite Plaintiff's continuing reports of headaches. (*See*, *e.g.*, Tr. 23, discussing records from Dr. Laine reporting that Plaintiff's treatment regimen was "significantly beneficial for intense migraine days"; Tr. 485, medications provide "some benefit"; Tr. 486, 2/27/17 note reporting "significant benefit from triptans").

After her February 2017 visit, Dr. Laine noted that she is "functionally limited due to slow thought processing chronic fatigue and fibromyalgia and no longer works." (Tr. 488). In fact, the ALJ's finding that Plaintiff can no longer work as a pharmacist but is limited to work with no strict or fast pace production quotas is consistent with that opinion.

Other records from Dr. Laine further support the ALJ's analysis that treatment

13

provided sufficient relief to allow Plaintiff to perform some level of unskilled work. *See, e.g.*, Tr. 490, 7/15/17 note reporting that total number of headache days "has lessened"; Tr. 496, 10/9/17 note stating that treatment with Botox "was definitely better" but for "headache mild and nagging for a few weeks now" after a recent concussion, but without any "severe migraine."). Plaintiff followed up with Dr. Laine approximately every three months for injections, including on 1/12/18 and 4/12/18. Notes from those visits are nearly identical, reporting that since her last visit in October 2017, Plaintiff had called in "with several days of severe migraine in a row," and had attempted one medication without benefit, but that a successful combination of magnesium Zofran and Depacon allowed Plaintiff to remain "headache free for 1 month." (Tr. 461; *see also* Tr. 456). Both notes state that Plaintiff was seeking another home infusion after a "recent 9 day bout of migraine." (*Id.*) Dr. Laine prescribed the requested treatment, despite concerns about insurance coverage, based on the fact that she had "benefitted significantly" from the prior infusions. (Tr. 462). The same note documents that Plaintiff "has at least 15 days of headache per month," which qualifies her for injectable treatment under prior authorization. (Tr. 457).

Plaintiff points out that on her next follow-up visit, on 7/12/18, Dr. Laine noted Plaintiff's report that she had been "more debilitated with migraine." (Tr. 655). However, the same office visit records a reduction of "at least 100 less hours of migraine per mont[h]" as well as a few days without any headache, with Botox and other medication resulting in a "40% reduction in severity" of her headache symptoms. (Tr. 657). And on June 28, 2018, Plaintiff reported to the consulting psychologist that she spent time in bed no more than "maybe once or twice a month" due to pain. (Tr. 473, 474).

14

At a follow-up visit shortly after Plaintiff's DLI, on 10/12/18, Dr. Laine reported that with the injectable treatments Plaintiff reported she was "45% improved" with "7-8 days of headache freedom at a time." (Tr. 519). The next sentence states "13-15 headache days per month – 5 headache days per week," but the same record also states that rescue medication "for severe migraine is beneficial." (Tr. 519). Dr. Laine also noted Plaintiff's expressed "concern[] about needing disability" based upon the severity of her migraines. (Tr. 641). Contrary to Plaintiff's argument, on the whole Dr. Laine's office notes reflect significant improvement in the severity of Plaintiff's migraine symptoms.

The ALJ found further inconsistencies between Plaintiff's report of disabling symptoms and her ability "to engage in a level of activity that is not entirely consistent with total disability," including regularly shopping online several times a week and in stores every other week "for several hours." (Tr. 22-23). Plaintiff reported that "shopping is what makes her happy," and "that she attends her children's sporting events and goes out socially a few times a year to once a month." (Tr. 23). Having reviewed the record, including Plaintiff's function report, the undersigned finds the ALJ's analysis to be substantially supported. On her function report, Plaintiff stated that she gets her children ready for school, goes back to bed, goes to appointments, does dishes/laundry and housework if she has the energy, feeds her family and does what needs to be done with activities for them. (Tr. 234). She also stated that she works "every waking hour" for her husband and children, by "feed[ing], shop[ping], cook[ing], clean[ing], laundry, organiz[ing], help[ing] with schoolwork, counsel[ing] 3 children with anxiety and 2 of the three with ADHD," with help from her husband only when he is able. (*Id.*) In addition, she cares for three dogs that she feeds, grooms, lets in/out, takes to the vet, pets and plays with, with occasional help from her mother. (Tr. 234, 240). She also waters flowers

inside and outside, but stated that she no longer performs yardwork. (Tr. 239). She enjoys shopping and watching her children play sports; she texts with a few friends and talks on the phone with her mom 2-3 times per week. (Tr. 241). Most of her time is spent attending her childrens' activities "because my kids are involved" but she still goes out socially at least "3-4 times a year," (Tr. 241), and out to dinner with family and friends "maybe once a month." (Tr. 473).

It is important to note that the ALJ did not discredit all of Plaintiff's complaints. The ALJ determined that Plaintiff is impacted by multiple severe impairments but found that medications, including steroid injections, have been effective, and that Plaintiff was advised to increase physical activity and exercise. (Tr. 22.) The ALJ considered Plaintiff's reported "ongoing symptoms" when limiting her to light work with additional postural and environmental restrictions. (*Id.*) The ALJ further considered Plaintiff's expressed difficulty concentrating, focusing and remembering due to chronic pain and/or medications, and limited her to "work that does not require strict production quotas or performed at a fast production rate pace and can adapt to work in an environment with infrequent changes that can be explained in advance." (*Id.*)

### b. Evaluation of Opinion Evidence from Dr. Laine

On an unspecified date, Dr. Laine completed a disability questionnaire in which she stated she had first seen Plaintiff in February 2017 and last seen her in April 2018. (Tr. 453-454). She stated that in October 2017, Plaintiff had reported "several days of severe migraines in a row with cervical & chronic widespread myofascial pain consistent with fibromyalgia." (Tr. 453). She diagnosed chronic pain syndrome and prescribed physical therapy, craniosacral massage therapy and medication. (Tr. 453) However, in response to a detailed question asking for her opinion about limitations in Plaintiff's ability

16

to perform sustained work activity, Dr. Laine wrote that Plaintiff has "no limitations." (Tr. 454). The ALJ found Dr. Laine's opinion to be "persuasive as it is supported by her own treatment notes of the claimant's normal physical examination results and beneficial response to treatment." (Tr. 23). However, as discussed, the ALJ still assessed limitations, albeit not at a disabling level, based upon the evidence supporting Plaintiff's chronic pain complaints.

The ALJ also evaluated a second opinion from Dr. Laine dated in April 2019, more than six months after Plaintiff's DLI. Dr. Laine's notes from an office visit ten days earlier document that Dr. Laine had "a long discussion" about Plaintiff's desire to obtain disability benefits. (Tr. 620). Both Plaintiff and her husband, who had accompanied her to the appointment, inquired "about additional income due to the inability to work." (Tr. 620). Dr. Laine documented that she agreed "the patient would not be able to work as a pharmacist," but "talked about other work using her degree with less demanding hours, or part time work with FMLA," notwithstanding Plaintiff's report that with her migraine and medication side effects she continues to have "several hours to days of head pain greater than 10-15 days per month[]." (Tr. 620).

On April 13, 2019, Dr. Laine provided a disability letter consistent with her April 3 office note, opining that Plaintiff "is not able to work *as a pharmacist*, given the degree of pain she has when she does have migraine and the unexpected nature." (Tr. 522, emphasis added).[6] The letter also states that due to a combination of "migraine and medication side effects she has several hours to days of head pain greater than 10-15 days per month," and has "ongoing post migraine symptoms which limit her ability to

---

[6] Consistent with Dr. Laine's opinion, the ALJ found that Plaintiff could no longer work as a pharmacist.

17

functio[n] for days." (Tr. 522).  Dr. Laine acknowledges that treatment has been beneficial but that Plaintiff "continues to have frequent debilitating migraine." (*Id*.)

Evaluating this second opinion, the ALJ first noted that the letter was dated "well after" Plaintiff's DLI.  (Tr. 23).  The ALJ found the statement "not persuasive" because

> it contradicts the provider's previous statement, is not supported by her own clinical notes and is not consistent with the evidence overall. Moreover, it appears to address a period outside of that considered in this application and addresses an issue reserved to the Commissioner, which is inherently neither valuable nor persuasive.

(Tr. 23-24).  The ALJ's analysis of this opinion is substantially supported based on the record presented.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** as supported by substantial evidence and that this case be **CLOSED**.

    s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KAREN H., | Case No. 2:20-cv-6112 |
| Plaintiff, | Sargus, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).